UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN CURRY,** | ) | CASE NO. 1:13CV709 |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **CUYAHOGA COUNTY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

This matter comes before the Court upon the Motion for Summary Judgment of Defendants, Mushtaq Mahmood, M.D. and Midwest Medical Staffing, Inc. (ECF No. 42). For the following reasons, the Court GRANTS Defendants' Motion and dismisses Plaintiff's claims.

**I.  BACKGROUND**

On July 16, 2011, John Curry was incarcerated in the Cuyahoga County Corrections Center ("CCCC"). (Am. Compl. ¶ 1). Upon his arrival, Medical Technical Assistant ("MTA") Treacie Williams completed an Initial Health Screening. The screening revealed

that Curry suffered from epilepsy, that he took a prescription called Keppra XR (extended release), that he brought his medication with him to the facility, but that he had not yet taken it that day.  (Am. Compl. ¶¶17-18; Curry Dep. 39:13-18).  Williams later verified that Curry's prescription consisted of taking six tablets of 500 milligram Keppra XR at bedtime.  Keppra XR is not one of the medications that the CCCC maintains in the formulary.  Although Curry asked to receive his medication numerous times that day, CCCC staff members did not provide Curry his medication at all on July 16, 2011.

On July 17, 2011, Dr. Mushtaq Mahmood, a physician employed by Midwest Medical Staffing, Inc. ("Midwest Medical"), was on shift to administer medical services to the inmates under Midwest Medical's contract with the CCCC to provide physician staffing.  During his morning shift, Dr. Mahmood reviewed Curry's chart and ordered that Curry continue taking Keppra XR as verified.  Despite Dr. Mahmood's order and Curry's requests to receive his medication, Curry never received any Keppra XR on July 17, 2011.  Dr. Mahmood was unaware that Curry did not receive his medication. (ECF No. 40-2 at 67).  He also was unaware that Keppra XR was a non-formulary drug. (ECF No. 40-2 at 44).  On July 18, 2011, while Curry was being released from the CCCC, he suffered a seizure causing him to strike his face on a door and fall to the floor.  Curry's injuries from the fall included facial trauma, fractured nasal bones and a laceration.

Curry alleges in his Amended Complaint that Dr. Mahmood, Midwest Medical, Cuyahoga County, Sheriff Bob Reid and MTA Williams deprived him of his rights, privileges and immunities secured by the Eighth and Fourteenth Amendments to the United States Constitution.  Specifically, Curry alleges that Defendants were deliberately indifferent to his

serious medical needs by intentionally failing to provide his epilepsy medication. Curry brings his claims under 42 U.S.C. § 1983.

Curry has already settled his claims with Cuyahoga County, Sheriff Reid and MTA Williams. In response to this motion, he has acknowledged that his claims against Midwest Medical have no merit since it was not responsible for any policies or procedures at CCCC. Accordingly, the Court dismisses Curry's claims against Midwest Medical. Dr. Mahmood, now the only remaining defendant, contends that his medical services rendered to Curry during his incarceration do not constitute deliberate indifference.

Dr. Mahmood argues that Curry's claims fail because he has not established the subjective component of deliberate indifference, which requires proving that Dr. Mahmood knew of the existence of a substantial risk of harm and that he disregarded that risk. Curry responds by arguing that: (1) Dr. Mahmood deliberately chose not to give Curry his verified medication; (2) Dr. Mahmood chose to delay Curry's medication; and (3) Dr. Mahmood failed to prescribe a comparable anti-seizure medication that was immediately available in the formulary. Curry contends that these actions show Dr. Mahmood's conscious disregard of the known probability that he may suffer a seizure without the proper medication.

Lastly, Dr. Mahmood argues that Curry's contentions are unsupported by record evidence and that his actions do not constitute deliberate indifference to Curry's serious medical needs.

## II.  LAW AND ANALYSIS

### A.) Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347. This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### B.) Deliberate Indifference under § 1983

Curry brings a 42 U.S.C. § 1983 claim against Dr. Mahmood, alleging that he acted with deliberate indifference to a serious medical need by intentionally failing to provide

epilepsy medication.  "The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward an inmate's serious medical needs."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  As a pretrial detainee, Curry is provided these same protections under the Due Process Clause of the Fourteenth Amendment.  *Id.* (citing *Bell v. Wolfish*, 411 U.S. 520, 545 (1979)).  "To state a claim under § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law."  *Dominguez v. Corr. Med. Services*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir.2006)).  In medical treatment cases, a plaintiff must establish that the defendants were deliberately indifferent to a serious medical need.  *Id.* (citing *Estelle*, 429 U.S. at 104).  "A constitutional claim for denial of medical care has objective and subjective components."  *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  To satisfy the objective component, the plaintiff must establish "a sufficiently serious medical need."  *Barnett v. Luttrell*, 414 F. App'x. 784, 787 (citing *Blackmore*, 390 F.3d at 895).  Medical need is objectively serious if a lay person would recognize the seriousness of the need for medical care.  *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).  In addition to the objective component, the subjective component of deliberate indifference requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

Curry alleges that Dr. Mahmood was deliberately indifferent to his serious medical needs in three key ways: (1) Dr. Mahmood deliberately chose not to give Curry his verified medication; (2) Dr. Mahmood chose to delay Curry's medication; and (3) Dr. Mahmood failed to prescribe a comparable anti-seizure medication that was immediately available in the formulary. Curry also relies on a showing of grossly inadequate care to establish Dr. Mahmood's deliberate indifference. Yet, relying on grossly inadequate care addresses only the objective element of deliberate indifference. *Runkle v. Fleming*, 435 F. App'x 483, 485 (6th Cir. 2011) (citing *Perez v. Oakland County,* 466 F.3d 416, 424 (6th Cir. 2006)). Since Dr. Mahmood has not disputed that Curry's epileptic condition is a serious medical need, the objective element is undisputed and therefore satisfied. Dr. Mahmood also does not dispute that he was acting under the color of state law as a physician in the CCCC. Thus, the core of this dispute centers on the subjective component of deliberate indifference.

**1.) Subjective Component of Deliberate Indifference**

To satisfy the subjective component, Curry must show that Dr. Mahmood had a "sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895. "Deliberate indifference 'entails something more than mere negligence.'" *Id.* (quoting *Farmer*, 511 U.S. at 835). Focusing on the prison official's state of mind, any "failure to alleviate a significant risk that *he should have perceived but did not*, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 838) (emphasis in original). A prison doctor's "careless or inefficacious" treatment does not show "deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of

-6-


a constitutional violation." *Id.* (quoting *Farmer*, 511 U.S. at 835); *see also Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

### i.) Dr. Mahmood's decision to not provide Curry his verified medication

Both parties acknowledge that Curry brought his medication and that it was verified by MTA Williams. While the parties dispute what exactly "verified" prescription means, this is immaterial. The main issue is Dr. Mahmood's decision not to provide the medication Curry brought with him to the jail. Curry contends that CCCC's Policies and Procedures permitted Dr. Mahmood to provide the medication Curry brought with him. Indeed, the relevant section of the CCCC Policy reads: "Prescriptions brought in by inmates are not to be used unless ordered by a physician." (ECF No. 40-2 at 90). Yet, this Policy language clearly leaves it within the discretion of the physician to decide whether to order a new prescription or to provide the medication brought with the inmate. Here, Dr. Mahmood chose to order new medication consistent with Curry's prescription. While hindsight shows this exercise of judgment was inefficacious, it does not establish that Dr. Mahmood was deliberately indifferent to Curry's medical needs.

### ii.) The delay in administering Curry's medication

Curry's second argument concerns the delay resulting from Dr. Mahmood's decision to order Keppra XR. Although this order is consistent with Curry's prescription, Keppra XR is a non-formulary drug. Despite having a copy of the formulary list in his office, Dr. Mahmood testified that he was unaware whether Keppra XR was a formulary drug. (ECF No. 40-2 at 44). Curry suggests that Dr. Mahmood should have known that Keppra XR was non-

formulary.  He argues that by prescribing this medication, Dr. Mahmood knowingly chose to delay his medication since non-formulary medications take longer to receive.  Indeed, at his deposition, Dr. Mahmood testified that he knows that there "might be a little delay."  (ECF No. 40-2 at 24).  Yet, he also testified that his "expectation is hours."  (*Id.*).

Curry offers no evidence to dispute Dr. Mahmood's testimony regarding his experience in ordering non-formulary medications.  Regardless of whether Dr. Mahmood knew that Keppra XR was non-formulary, he expected that Curry would receive his medication within a matter of hours.  Since Dr. Mahmood reviewed the chart and ordered the medication during his morning shift, he expected that Curry would receive his medication by bedtime—per his usual prescription.  Curry has offered neither examples of similarly long delays, nor testimony of any such incident.  As with the first issue, Curry's questioning of Dr. Mahmood's medical judgment or lack of knowledge of the potential delay does not amount to a showing of deliberate indifference.

### iii.) Dr. Mahmood's failure to prescribe an available alternative

Lastly, Curry challenges Dr. Mahmood's decision to order Keppra XR instead of Keppra (plain), which was a comparable alternative available in the formulary.  Again, Dr. Mahmood maintains that he was unaware of which medications were actually kept in the formulary despite the list being in his office.  Whether or not Dr. Mahmood knew of this available alternative, however, he believed that ordering Keppra XR would only take a few hours to be delivered to Curry—in time for his nightly dose.  Moreover, Dr. Mahmood testified that under the typical CCCC procedure, a staff member would call the doctor to suggest an available alternative if the non-formulary medication would result in untimely

distribution. (ECF No. 40-2 at 24-25). Yet, Dr. Mahmood never received such notification. (*Id.* at 67). Accordingly, he presumed that medication would be administered as ordered and lacked any knowledge of the resulting delay.

Curry has failed to provide evidence to create a genuine issue of any material fact. Specifically, he has not established that Dr. Mahmood's state of mind satisfied the subjective component of deliberate indifference. Further, none of Dr. Mahmood's actions have demonstrated deliberate indifference to Curry's medical needs. Thus, Defendants' Motion for Summary Judgment is granted.

### III.  CONCLUSION

For the foregoing reasons, Defendant Midwest Medical is DISMISSED and the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's sole remaining 42 U.S.C. § 1983 claim that Dr. Mahmood deprived him of his rights, privileges and immunities secured by the Eighth and Fourteenth Amendments to the U.S. Constitution by acting with deliberate indifference to his serious medical needs. Therefore, Plaintiff's Complaint is dismissed.

**IT IS SO ORDERED.**

                                                **s/ Christopher A. Boyko**
                                                **CHRISTOPHER A. BOYKO**
                                                **United States District Judge**

**Dated:  September 29, 2014**